# IN THE UNITED STATES DISTRICT COURT
# FOR THE SOUTHERN DISTRICT OF OHIO
# EASTERN DIVISION

| | | |
|---|---|---|
| JOHN DOE, a minor, | : | Case No. 2:20-cv-4119 |
| | : | |
| Plaintiff, | : | Chief Judge Algenon L. Marbley |
| | : | |
| v. | : | Chief Magistrate Judge Deavers |
| | : | |
| FRANKLIN COUNTY CHILDREN SERVICES, et al., | : | |
| | : | |
| Defendants. | : | |

## DEFENDANTS' BRIEF

Now come Defendants, by and through undersigned counsel, and, for the reasons set forth in the accompanying memorandum in support, respectfully request this Court to deny Plaintiff's Motion for Preliminary Injunction.

Respectfully Submitted,

**RON O'BRIEN**
**PROSECUTING ATTORNEY**
**FRANKLIN COUNTY, OHIO**

*/s/Nick A. Soulas, Jr.*
Nick A. Soulas, Jr. (0062166)
First Assistant
Trial Attorney
Amy L. Hiers (0065028)
Assistant Prosecuting Attorney
Civil Division
373 South High Street, 13th Floor
Columbus, Ohio 43215-6318
(614) 525-3520
(614) 525-6013 FAX
ahiers@franklincountyohio.gov
nsoulas@franklincountyohio.gov
Counsel for Defendants

**MEMORANDUM IN SUPPORT**

**I.      INTRODUCTION**

On August 12, 2020, Plaintiff filed a Complaint, (ECF No. 1), as well as an Application for Temporary Restraining Order ("TRO") (ECF No. 2), against Defendants Franklin County Children Services ("FCCS"); Charles Spinning, in his individual and official capacities; and Atha Sanders, in her individual and official capacities. In his Complaint, Plaintiff alleges constitutional violations of his procedural due process rights and First Amendment retaliation and requests, among other things, an order restraining Defendants from taking further action related to Plaintiff's placement or custody other than as ordered by this Court and an order that Defendants "give custody" of Plaintiff to his maternal grandmother "per the recommendation of the GAL." In his Application for TRO, Plaintiff asked this Court to order that no further action be taken as to his placement and no change be made to his placement and that the Court order that custody of Plaintiff "be removed from Defendant FCCS and placed with maternal grandmother."

This Court held a Rule 65.1 Conference on August 12, 2020, and granted Plaintiff's Application for TRO to the extent that it requested no changes to his placement while the litigation continued. (ECF No. 6). Pursuant to this Court's Order, the parties were ordered to file briefs addressing the four factors for issuance of a preliminary injunction and the question of the Court's jurisdiction under the *Younger* abstention and *Rooker-Feldman* doctrines, which Defendants argued at the 65.1 Conference as reasons why the Court should deny the requested TRO.

**II.     RELEVANT FACTUAL BACKGROUND**

This litigation arises from a custody case in state court. On December 25, 2018, FCCS received a referral in its Intake Department and opened an investigation. (FCCS 3-7)

On January 23, 2019, FCCS filed a complaint in the Franklin County Court of Common Pleas, Domestic Relations, Juvenile Division, alleging that Plaintiff was an abused, neglected or dependent child ("AND"), all due to concerns related to Plaintiff's Mother. (Case No. 19 JU 830) Although Plaintiff's Father had attempted through multiple, earlier custody filings[1] to have a relationship with Plaintiff, his whereabouts were unknown at the time of filing. FCCS received a temporary order of custody ("TOC") with no additional orders. FCCS placed Plaintiff with his maternal grandmother ("MGM").

On April 22, 2019, Case No. 19 JU 830 was dismissed as the 90 day statutory time frame had run. The case was re-filed under Case No. 19 JU 4869 and the court issued a TOC to MGM and a temporary order of protective supervision (TOPS) to FCCS. The court additionally ordered that Mother was to have supervised visits with Plaintiff and was to complete mental health and alcohol and drug dependency assessments. (FCCS 68-80)

Father was located by FCCS sometime between May and July 2019. Father indicated Mother kept him from Plaintiff. He had filed several contempt motions against her to see his son. He ran out of money to continue his legal fight and then had to move to Florida when his mother became ill. FCCS records on October 11, 2019, reflect that Father purchased a cellphone for Plaintiff and talks to him "almost daily." (FCCS 96-104) Father also visited Plaintiff in Ohio on two occasions, the first one being on January 16, 2020. (FCCS 300-303)

---

[1] Father filed a custody action against Mother on March 26, 2009 in Case No. 09 JU 3931. (FCCS 869-878) On May 28, 2010, the court granted Father parenting time. (FCCS 879-884) Father filed a contempt motion against Mother on November 23, 2010, for not letting him see the child. (FCCS 885-889) On March 25, 2011, the court found her in contempt. (FCCS 890-891) Father filed a second contempt motion on August 7, 2012, for the same reasons. (FCCS 892-898) On July 15, 2013, Father withdrew the motion. On October 24, 2013, Father filed to modify the parenting time orders. (FCCS 899-900) On August 22, 2014, Father agreed to give up his parenting time with the child. (FCCS 901-915)

On July 15, 2019, Case No. 19 JU 4869 was adjudicated and Plaintiff was found to be a dependent minor pursuant to O.R.C. § 2151.04(C). The court terminated the TOC to MGM and granted temporary court commitment ("TCC") of the child to FCCS with additional orders that Mother have supervised visits, that child complete a psychological evaluation and that Father have unsupervised visits in the State of Ohio. Father appeared with counsel at this hearing. The case was set for an annual review on June 26, 2020. FCCS placed the child with MGM. (FCCS 68-80)

On September 4, 2019, the Interstate Compact on the Placement of Children ("ICPC") was initiated pursuant to O.R.C. § 5103.23 and O.A.C. § 5101:2-52. (FCCS 582-583) The ICPC process goes through the Franklin County, Ohio Compact Commissioner and begins with sending a letter to Florida requesting the home study. (FCCS 584-585) Florida then reached out to Father to complete a background check on household members, obtain financial information, and complete a home study evaluation. Once complete, Florida sends a letter and packet back to Ohio reporting their findings and indicating whether they approve or deny the request to place the child with Father. (FCCS 105-113)

On October 15, 2019, MGM filed motions for legal custody of Plaintiff and to be added as a new party. (FCCS 966-974) On January 17, 2020, Father filed for legal custody of Plaintiff (FCCS 975-978) and MGM filed second motions for legal custody of Plaintiff and to be added as a new party. (FCCS 979-987)

On February 3, 2020, Ohio received ICPC approval from Florida to allow placement to be made with Father. (FCCS 916-957) A plan is made to begin visits with Father in Florida starting in March to re-build the Father/Son bond before making placement. COVID then hit delaying the start of the visits, but telephone contact between the two continued.

From June 18 to June 22, 2020, Plaintiff visited Father in Florida over Father's Day weekend. Plaintiff was accompanied by a caseworker for the trip. No concerns were reported. (FCCS 354-361)

On June 26, 2020, the Annual Review was held. The court dismissed all motions filed by MGM, Father, and Mother. The court granted FCCS's motion for an extension of custody (FCCS 989-993) and a review date of December 14, 2020 was set. (FCCS 994-1001) FCCS requested the extension in order to allow for the child to do more visits with Father and to continue to build a bond before placement. The GAL report supported FCCS's request to extend and allow time for bonding. (FCCS 958-965)

From July 23 to July 27, 2020, Plaintiff again visited Father in Florida. Plaintiff was accompanied by a caseworker for the trip. No concerns were reported. (FCCS 636-639)

Father's ICPC was set to expire August 3, 2020. (FCCS 303-305) FCCS was able to get it extended to September 3, 2020. With Father having been fully cooperative with FCCS and the ICPC in Florida, plus having visits with no concerns, the decision was made to move forward with placement on August 13, 2020. The timing also appeared right to get the child settled before the new school year started. Father had already requested school records and completed paperwork to have the child enrolled in school there. Father also contacted a local counselor to set up an intake appointment. Plaintiff's current counselor is doing telehealth so that would continue from Florida until the new counselor takes over. Placement with Father must be made by September 3, 2020, or the ICPC process, which can take months, must start again. Once placement is made, the child must remain in FCCS custody until concurrence is received from Florida. This usually takes 4-6 months. Once concurrence is received, FCCS can move the juvenile court to terminate its orders and grant legal custody to Father.

O.R.C. § 2151.353 details the dispositions available to the court including no extensions beyond the two (2) year mark. At two years, FCCS must (1) return the child home to Mother, or (2) seek an order granting legal custody to Father or someone else or (3) file for permanent custody for the purposes of adoption. With the two year mark fast approaching, placement with Father must happen soon in order to leave time for concurrence from Florida.

### III. LAW AND ARGUMENT

#### A. Standard to be applied in determining whether to grant the requested extraordinary injunctive relief.

A preliminary injunction is an extraordinary remedy. *Leary v. Daeschner,* 228 F.3d 729, 739 (6th Cir. 2000). The proof required for a plaintiff to obtain a preliminary injunction is much more stringent than the proof required to survive a motion for summary judgment. *Id*.

In considering whether to grant such extraordinary relief, a court considers four factors: "(1) whether the movant has a strong likelihood of success on the merits; (2) whether the movant would suffer irreparable injury without the injunction; (3) whether issuance of the injunction would cause substantial harm to others; and (4) whether the public interest would be served by issuance of the injunction." *Chabad of S. Ohio v. City of Cincinnati*, 363 F.3d 427, 432 (6th Cir. 2004) (quoting *Blue Cross & Blue Shield Mut. of Ohio v. Blue Cross & Blue Shield Ass'n*, 110 F.3d 318, 322 (6th Cir. 1997)).

Where a plaintiff alleges a constitutional violation, however, "the likelihood of success on the merits often will be the determinative factor." *Obama for America v. Husted*, 697 F.3d 423, 436 (6th Cir. 2012) (quoting *Jones v. Caruso*, 569 F.3d 258, 265 (6th Cir. 2009). See, also, *Gonzales v. Nat'l Bd. of Med. Examiners*, 225 F.3d 620, 625 (6th Cir. 2000) ("Although no one factor is controlling, a finding that there is simply no likelihood of success on the merits is usually

6

fatal.") As discussed below, there are several separate and independent reasons why Plaintiff has no likelihood of success on the merits of his claims and this case should be dismissed in its entirety.

> **B. Plaintiff has failed to establish that he is entitled to such an extraordinary remedy because he does not have a strong likelihood of success on the merits.**
>
>> *1. This Court should abstain from exercising its jurisdiction under Younger v. Harris.*

The Supreme Court's decision in *Younger v. Harris* "counsels federal-court abstention when there is a pending state proceeding" and "reflects a strong policy against federal intervention in state judicial processes in the absence of great and immediate irreparable injury to the federal plaintiff." *Moore v. Sims*, 442 U.S. 415, 423 (1979); *Younger v. Harris,* 401 U.S. 37, 91 S. Ct. 746, 27 L. Ed. 2d 669 (1971). The *Younger* abstention doctrine applies to all civil proceedings in which government is a party. *Trainor v. Hernandez*, 431 U.S. 434, 97 S. Ct. 1911, 52 L. Ed. 2d 486 (1977). The Sixth Circuit has held that "[u]nder *Younger* abstention…a federal court must decline to interfere with pending state civil or criminal proceedings when important state interests are involved." *O'Neill v. Coughlan*, 511 F.3d 638, 641 (6th Cir. 2008); *Cooper v. Parrish*, 203 F.3d 937, 954 (6th Cir. 2000). Moreover, cases out of the Supreme Court and the Sixth Circuit make it clear that abstention is generally appropriate in matters of family relations such as child custody. *See, e.g., Moore v. Sims*, 442 U.S. at 435; *Kelm v. Hyatt*, 44 F.3d 415, 419, (6th Cir. 1995); *Mann v. Conlin*, 22 F.3d 100 (1994), *cert. denied*, 513 U.S. 870 (1994).

Courts must consider three factors in determining whether to abstain from interfering in a state proceeding: "1) whether the underlying proceedings constitute an ongoing judicial proceeding, 2) whether the proceedings implicate an important state interest, and 3) whether there is an adequate opportunity in the state proceedings to raise a constitutional challenge." *Fieger v. Cox*, 524 F.3d 770, 775 (6th Cir. 2008) (citing *Tindall v. Wayne County Friend of the Court*, 269

F.3d 533, 538 (6th Cir. 2001). A consideration of these factors compels abstention here.

      a. The underlying juvenile proceedings constitute an ongoing judicial proceeding.

Judicial proceedings have been ongoing in juvenile court since January of 2019, first under Case No. 19 JU 830 and then under Case No. 19 JU 4869. The case is still pending and active under the latter case number. Most recently, on June 26, 2020, the juvenile court conducted an annual review of the case; dismissed all motions filed by MGM, Father, and Mother; granted FCCS's motion for an extension of custody; and set a definite case review date of December 14, 2020. (FCCS 994-1001). Plaintiff filed this suit on August 12, 2020. Thus, a state proceeding on Plaintiff's custody was pending when he filed his federal complaint. *Cooper*, 203 F.3d at 954 (stating that a court should look to whether a state proceeding was pending at the time the federal complaint was filed).

      b. Family relations matters such as child custody are important state interests.

It is well-settled and beyond dispute that domestic relations, including child custody and child welfare and protection, are important state interests. *Moore*, 442 U.S. at 423, 435; *Kelm*, 44 F.3d at 420 (explaining that domestic relations is an area of important state interest).

      c. Juvenile court provides an adequate opportunity to raise constitutional challenges.

Initially, a federal court must presume that a state court is able to protect the interests of the federal plaintiff. *Kelm*, 44 F.3d at 420 (citing *Pennzoil Co. v. Texaco, Inc.*, 481 U.S. at 15). In *Pennzoil*, the Supreme Court explained that "Article VI of the United States Constitution declares that 'the Judges in every State shall be bound' by the Federal Constitution, laws, and treaties. We cannot assume that state judges will interpret ambiguities in state procedural law to bar presentation of federal claims." 481 U.S. at 15. As such, the burden of establishing the inadequacy

8

of juvenile court rests on Plaintiff. *See Pennzoil*, 481 U.S. at 14; *Kelm*, 44 F.3d at 420.

Plaintiff has not alleged that he is unable to raise his constitutional claims in the juvenile court proceeding. Moreover, Ohio Revised Code § 2151.01 provides that juvenile court jurisdiction is to be "liberally interpreted and construed" so that, among other objectives, "the parties are assured of a fair hearing, and their constitutional and other legal rights are recognized and enforced." O.R.C. § 2151.01(B). Finally, the Sixth Circuit has affirmed the application of *Younger* abstention to constitutional claims when the forum for the state court proceeding is juvenile court. See *J.P. v. DeSanti*, 653 F.2d 1080, 1084-85 (6th Cir. 1981)(court rejected claim that abstention was improper because Ohio law did not provide an opportunity for a class of juvenile appellants to raise a constitutional challenge to juvenile court procedure); *Meyers v. Franklin Cty. Court of Common Pleas*, 6th Cir. Aug. 7, 2001) 23 Fed. Appx. 201 \*; 2001 U.S. App. LEXIS 18116 \*\*6-11 (affirming district court's decision to abstain based on the *Younger* abstention doctrine).

Given the foregoing, all three elements necessary for abstention under *Younger* are met and Plaintiff's claim for injunctive relief should be dismissed. If *Younger* abstention was the only reason to dismiss, this Court would more than likely stay the damages claim. However, for the reasons set forth below, Plaintiff's claims should be dismissed in their entirety.

> 2. *This Court should abstain from exercising jurisdiction under the Rooker-Feldman Doctrine.*

Notwithstanding the foregoing discussion regarding *Younger* abstention, and in addition to it, this Court should abstain from exercising jurisdiction in this case under the *Rooker-Feldman* doctrine.

> Generically stated, the *Rooker–Feldman* doctrine stands for the unremarkable proposition that a federal district court lacks subject matter jurisdiction to review a state court decision. *McCormick v. Braverman*, 451 F.3d 382, 389 (6th Cir. 2006)

9

>(stating that "a district court [cannot] exercise appellate review of a state court decision"). The doctrine originally derived from the two Supreme Court cases bearing its name. See *Rooker v. Fidelity Trust Co.*, 263 U.S. 413, 44 S.Ct. 149, 68 L.Ed. 362 (1923); *Dist. of Columbia Court of Appeals v. Feldman*, 460 U.S. 462, 103 S.Ct. 1303, 75 L.Ed.2d 206 (1983). In the years following the *Feldman* decision, the lower courts gradually expanded the doctrine's amorphous application until, recently, the Supreme Court issued its decision in *Exxon Mobil Corp. v. Saudi Basic Industries Corp.*, 544 U.S. 280, 125 S.Ct. 1517, 161 L.Ed.2d 454 (2005), clarifying and restricting the doctrine's scope. The Exxon decision stressed the "narrow" and "limited" application of the doctrine, holding that "[t]he Rooker–Feldman doctrine ... is confined to cases of the kind from which the doctrine acquired its name: cases brought by state-court losers complaining of injuries caused by state-court judgments rendered before the district court proceedings commenced and inviting district court review and rejection of those judgments." *Id*. at 284, 125 S.Ct. 1517. The doctrine does not prevent "a district court from exercising subject-matter jurisdiction simply because a party attempts to litigate in federal court a matter previously litigated in state court." *Id*. at 293, 125 S.Ct. 1517. "If a federal plaintiff presents some independent claim, albeit one that denies a legal conclusion that a state court has reached in a case to which he was a party, then there is jurisdiction" because *Rooker–Feldman* does not apply. Id. (quotations omitted).

*Pittman v. Cuyahoga Cty. Dept. of Children & Family Services*, 241 Fed. Appx. 285, 287–88 (6th Cir. 2007).

Plaintiff's MGM twice sought to intervene in the state court proceeding as a party and filed Motions for Legal Custody; first on October 15, 2019 and again on January 17, 2020. (FCCS 966-974; 979-987). After a hearing on those, and other motions filed by parties to the underlying proceedings, the state court denied the motions filed by Plaintiff's MGM. (FCCS 994-1001)

In the instant matter, as a part of the relief requested in his Complaint, Plaintiff seeks orders from this Court "restraining the **Defendants from taking further action related to [Plaintiff's] placement or custody other than as ordered by the Court"; and ordering "Defendants to give custody of [Plaintiff] to maternal grandmother granting custody to his maternal grandmother…".** (ECF No. 1, PADEID# 7). Thus, by a clear reading of Plaintiff's own Complaint, he is seeking what the *Rooker-Feldman* doctrine expressly prohibits; he is seeking

10

relief from this Court to undo what the state court has already ordered. As stated above, on July 15, 2019, the state court found Plaintiff to be a dependent minor pursuant to O.R.C. § 2151.04(C). The court terminated the temporary order of custody originally granted to Plaintiff's MGM, and granted temporary court commitment ("TCC") of the child to FCCS. After a hearing on June 26, 2020, regarding Plaintiff's MGM's motions to become a party in the action and to be awarded custody, the court again denied custody to Plaintiff's MGM and maintained custody with FCCS.

Plaintiff's attempts to "appeal" the state court decision denying custody to Plaintiff's MGM should not be entertained by this Court and this matter must be dismissed pursuant to the *Rooker-Feldman* doctrine.

### 3. *Plaintiff cannot prevail on his procedural due process claim.*

In Plaintiff's Complaint it is clear that he is asserting a procedural due process claim rather than a substantive due process claim against FCCS. (ECF No. 1, PAGEID# 5).

> The question of whether a particular deprivation meets procedural due process requirements is answered by considering three factors: "First, the private interest that will be affected by the official action; second, the risk of an erroneous deprivation of such interest through the procedures used, and the probable value, if any, of additional or substitute procedural safeguards; and finally, the Government's interest, including the function involved and the fiscal and administrative burdens that the additional or substitute procedural requirement would entail." *Mathews v. Eldridge*, 424 U.S. 319, 335, 96 S.Ct. 893, 47 L.Ed.2d 18 (1976); see also *Santosky*, 455 U.S. at 754, 102 S.Ct. 1388 (citing *Lassiter v. Dept. of Soc. Servs.*, 452 U.S. 18, 27–31, 101 S.Ct. 2153, 68 L.Ed.2d 640 (1981)(applying *Mathews* test to parental rights termination proceedings)). Parents are generally entitled to a hearing before their parental rights can be terminated. *Santosky* at 757–58, 102 S.Ct. 1388 (finding that preponderance standard of proof at termination proceedings provided insufficient due process). Even a temporary deprivation of physical custody requires a hearing within a reasonable time. *Doe v. Staples*, 706 F.2d 985, 990 (6th Cir.1983).

*Smith v. Williams-Ash*, 173 Fed. Appx. 363, 366 (6th Cir. 2005).

The above cited authority is specific to the due process afforded to parents regarding the pre-deprivation of their parental rights. While not an issue herein, there is no tenable claim that the

appropriate process was not afforded to Plaintiff's mother prior to the termination of her parental rights. As to the rights of children who have been separated from their parents after the required due process has been afforded, those due process rights are not as well established.

> Ordinarily, a § 1983 claim must be predicated on the deprivation of a federal constitutional right. However, state law in the form of statutes, rules, regulations or policy statements, may give rise to a protected liberty interest that cannot be infringed absent observance of procedural due process. *Washington v. Starke*, 855 F.2d 346, 348 (6th Cir.1988). In determining whether state law creates a protected liberty interest, the question is whether the state has imposed specific "substantive limitations" on the discretion of state officers, or, in other words, whether the state has used explicit "language of an unmistakably mandatory character, requiring that certain procedures 'shall,' 'will' or 'must' be employed." *Hewitt v. Helms*, 459 U.S. 460, 471, 103 S.Ct. 864, 871, 74 L.Ed.2d 675 (1983); *Washington, supra*, 855 F.2d at 349; *Franklin v. Aycock*, 795 F.2d 1253, 1260 (6th Cir.1986). "The mandatory nature of the regulation is the key, as a plaintiff 'must have a legitimate claim of entitlement to the interest, not simply a unilateral expectation of it.' " *Washington*, 855 F.2d at 349, (emphasis in original), quoting *Bills v. Henderson*, 631 F.2d 1287, 1292 (6th Cir.1980).

*Coker on Behalf of Coker v. Henry*, 813 F.Supp. 567, 569 (W.D.Mich.1993), aff'd, 25 F.3d 1047 (6th Cir. 1994).

In the state of Ohio, once temporary custody is awarded to FCCS, Ohio Revised Code § 2151.353 and Ohio Administrative Code 5101:2-39 address the obligations of a public children services agency with respect to the care and placement of a child. A review of the record in the state court case demonstrates that FCCS followed all requirements, including those regarding case initiation, the preparation and adherence to a case plan that has been approved by the state court - which includes attempts at reunification and facilitating bonding between Plaintiff and his father.

Thus, in the absence of *any* alleged violation of any procedural due process right of the Plaintiff, he clearly is unable to meet his burden.

      *4.  Plaintiff cannot prevail on his First Amendment Retaliation claim.*

  While not entirely clear, it appears that Plaintiff is alleging that Defendants decided to place him with his Father because Plaintiff had expressed his wishes to remain with his MGM and his fear of going to Florida to live with his Father to Defendant Sanders and the GAL. (Compl., ¶¶ 21, 22, 24-26, 41) Plaintiff alleges the placement decision is punishment for exercising his constitutional rights in speaking out about matters of public concern; that Defendants' actions were motivated by Plaintiff's exercise of his constitutional rights; and that Defendants have no legitimate justification whatsoever for these actions that would indicate any motivation other than an unlawfully retaliatory one. (Compl., ¶¶ 43-45)

  To establish a *prima facie* case of First Amendment retaliation under 42 U.S.C. § 1983, a plaintiff must demonstrate that: "(1) he was engaged in a constitutionally protected activity; (2) he was subjected to adverse action or deprived of some benefit; and (3) the protected speech was a 'substantial' or 'motivating factor' in the adverse action." *Farhat v. Jopke*, 370 F.3d 580, 588 (6th Cir. 2004) (citing *Leary v. Daeschner*, 349 F.3d 888, 897 (6th Cir. 2003) (citations omitted)).

  Assuming, without conceding, that Plaintiff could establish the first two elements of a *prima facie* case, his claim fails under the third element because Plaintiff cannot show that any protected speech was a "substantial" or "motivating factor" in Defendants' decision to place him with his Father. Plaintiff must point to specific, non-conclusory allegations reasonably linking his speech to the placement decision, which he has failed to do. He does not even allege when he expressed his wishes (*i.e.*, engaged in the constitutional conduct) to Defendant Sanders. In any event, Defendants' decision to place Plaintiff with his Father was based upon the case plan filed and approved in state court and Father's approved home study received as a part of the ICPC; again, FCCS received the approved home study in February of this year and delayed placement in

order to allow time for Father and Plaintiff to bond. Finally, and for the same reasons set forth above, even if Plaintiff could establish a *prima facie* case, Defendants can demonstrate that it is more likely than not that the same placement decision would have been made absent Plaintiff's allegedly protected speech.

        5.      *Plaintiff has failed to state a claim against FCCS, Defendant Spinning, and Defendant Sanders.*

            a.      Plaintiff has failed to state a claim against Spinning and Sanders in their individual capacity.

"It is well-settled that to state a cognizable Section 1983 claim, the plaintiff must allege some personal involvement by the [sic] each of the named defendants." *Bennett v. Schroeder*, 99 Fed. Appx. 707, 712-13 (6th Cir. 2004). See, also, *Salehpour v. University of Tennessee*, 159 F.3d 199, 206 (6th Cir.1998), cert. denied, 526 U.S. 1115 (1999); *Copeland v. Machulis*, 57 F.3d 476, 482 (6th Cir. 1995). Liability under § 1983 must be based upon active unconstitutional behavior, and a plaintiff needs to prove that the defendant did more than play a passive role in the alleged violation or showed mere tacit approval of the events. *Salehpour, supra,* at *id.* Plaintiff has not, and could not, allege any personal involvement of Defendant Spinning in the allegedly unconstitutional actions.

It is also well established that in § 1983 actions, "[q]ualified immunity shields federal and state officials from money damages unless a plaintiff pleads facts showing (1) that the official violated a statutory or constitutional right, and (2) that the right was 'clearly established' at the time of the challenged conduct." *Cockrell v. City of Cincinnati*, 468 F. App'x 491, 493 (6th Cir. 2012) (citing *Ashcroft v. al-Kidd*, 131 S.Ct. 2074, 2080, 179 L.Ed.2d 1149 (2011)). A court may address the elements of qualified immunity in either order. *Id.* "Qualified immunity is 'an immunity from suit rather than a mere defense to liability.'" *Pearson v. Callahan*, 555 U.S. 223, 237, (2009) (citing *Mitchell v. Forsyth*, 472 U.S. 511, at 526 (1985)). Plaintiff has failed to plead

14

sufficient facts to show that either Defendant Spinning or Sanders violated his statutory or constitutional rights and, even if he had pleaded sufficient facts, those rights were not clearly established at the time of the challenged conduct. Based on the foregoing, Defendants Spinning and Sanders, in their individual capacities, should be dismissed.

                        b.        Plaintiff has failed to state a claim Defendants Spinning and Sanders in their official capacity.

A § 1983 action against a government official in his or her official capacity is a claim against the government entity, as the real party in interest is the entity. *Kentucky v. Graham*, 473 U.S. 159, 165, 105 S.Ct. 3099, 87 L.Ed.2d 114 (1985) (quoting, *Monell v. Dep't of Soc. Servs.*, 436 U.S. 658, 690, n. 55 (1978)).

The Supreme Court has established the standard for a local government's § 1983 liability for injury due to execution of a policy, practice, or custom. Specifically, in *Monell*, the Court stated:

> [A] local government may not be sued under § 1983 for an injury inflicted solely by its employees or agents. Instead, it is when execution of a government's policy or custom, whether made by its lawmakers or by those whose edicts or acts may fairly be said to represent official policy, inflicts the injury that the government as an entity is responsible under § 1983.

*Monell v. Dept. of Social Services of City of New York*, 436 U.S. 658, 694, 98 S.Ct. 2018, 2037-38, 56 L.Ed.2d 611 (1978).

Courts interpreting *Monell* have held that a custom or practice that can gives rise to municipal liability under §1983 must be "persistent and widespread" so that it has become "so permanent and well-settled as to have the force and effect of law." *Jane Doe "A" v. Special School District of St. Louis County*, 901 F.2d 642, 646 (8th Cir. 1990). "[P]roof of a single, isolated incident of unconstitutional activity generally is not sufficient to impose municipal liability under *Monell*." *Wideman v. Shallowford Community Hosp., Inc.*, 826 F.2d 1030, 1032 (11th Cir. 1987)

(internal citations omitted). Accord, *Rodriguez v. Avita*, 871 F.2d 552, 555 (5th Cir. 1989), cert. denied sub nom *Rodriguez v. Brownsville*, 493 U.S. 854 (1989).

This policy, custom, or procedure must be a deliberate and conscious choice taken by a decision maker with final authority. *Pembaur v. City of Cincinnati*, 475 U.S. 469 (1986). Additionally, this policy must be the "moving force" that animated the government official's behavior that resulted in the constitutional violation. *Searcy v. City of Dayton*, 38 F.3d 282, 286 (6th Cir. 1994); *Molton v. City of Cleveland*, 839 F.2d 240 (6th Cir. 1988), cert. denied, 489 U.S. 1068 (1989).

With respect to his procedural due process claim only, Plaintiff alleges that the "violations of Plaintiff's constitutional and civil rights described herein was the direct result of FCCS custom, practice and/or policy in that the Defendants and other FCCS supervisors and administrators were aware of, and indeed involved in, the implementation of the unconstitutional customs, policies, and practices." (Compl. ¶38).

Plaintiff fails to identify any FCCS policy, custom, or procedure that resulted in the alleged violation of his procedural due process rights and fails to tie any allegedly unconstitutional actions to an official policy, custom, or procedure authorized by Director Spinning in his official, municipal capacity. The Supreme Court has "consistently refused to hold municipalities liable under a theory of *respondeat superior*." *Bd. of Cnty. Comm'rs v. Brown*, 520 U.S. 397, 403 (1997), citing *Tuttle*, 471 U.S. at 828; *Pembaur*, 475 U.S. at 478-79; *St. Louis v. Paprotnik*, 485 U.S. 112, 122 (1988); and *Canton v. Harris*, 489 U.S. 378, 392 (1989).

Additionally, if officials sued in their individual capacity are entitled to qualified immunity because they did not violate a clearly established constitutional right, those sued in their official capacity cannot be liable because there was no constitutional violation. *See, Hagans v. Franklin*

*County Sheriff's Office*, 695 F.3d 505, 511 (6th Cir. 2012). As set forth in Section B.5.a., *supra*, the individual Defendants are entitled to qualified immunity with respect to Plaintiff's procedural due process claim, which is the same claim Plaintiff has asserted against Defendants in their official capacity. Given the foregoing, both Defendants Spinning and Sanders, in their official capacities, and FCCS, should be dismissed.

**C.     Plaintiff will not suffer irreparable injury without the injunction**.

With regard to the showing of irreparable injury, the Supreme Court has reaffirmed that:

> Our frequently reiterated standard requires plaintiffs seeking preliminary relief to demonstrate that irreparable injury is *likely* in the absence of an injunction. *Los Angeles v. Lyons,* 461 U.S. 95, 103, 103 S.Ct. 1660, 75 L.Ed.2d 675 (1983); *Granny Goose Foods, Inc. v. Teamsters,* 415 U.S. 423, 441, 94 S.Ct. 1113, 39 L.Ed.2d 435 (1974); *O'Shea v. Littleton,* 414 U.S. 488, 502, 94 S.Ct. 669, 38 L.Ed.2d 674 (1974); see also 11A C. Wright, A. Miller, & M. Kane, Federal Practice and Procedure § 2948.1, p. 139 (2d ed.1995) (hereinafter Wright & Miller)(applicant must demonstrate that in the absence of a preliminary injunction, "the applicant is likely to suffer irreparable harm before a decision on the merits can be rendered"); *id*., at 155, 94 S.Ct. 669 ("[A] preliminary injunction will not be issued simply to prevent the possibility of some remote future injury"). Issuing a preliminary injunction based only on a possibility of irreparable harm is inconsistent with our characterization of injunctive relief as an extraordinary remedy that may only be awarded upon a clear showing that the plaintiff is entitled to such relief. *Mazurek v. Armstrong,* 520 U.S. 968, 972, 117 S.Ct. 1865, 138 L.Ed.2d 162 (1997) (*per curiam*).

*Winter v. Natural Res. Def. Council, Inc.,* 555 U.S. 7, 22 (2008).

Plaintiff cannot show that irreparable injury is likely in the absence of an injunction; he is seeking this injunction to prevent the possibility of some remote future injury. Plaintiff's Father will be receiving temporary placement of Plaintiff; Plaintiff and his Father will still be monitored by both the children services agency in Florida and FCCS throughout the placement and until such time (if it happens) as Plaintiff's Father is awarded legal custody of Plaintiff.

### D. Third parties will be injured if the injunction is granted.

Plaintiff "is required to show through clear and convincing evidence that granting a preliminary injunction would not harm third parties." *Youngstown City Sch. Dist. Bd. of Educ. v. State*, 2018-Ohio-2532, 104 N.E.3d 1060 (Ohio Ct. App. 2018).

In the instant matter, there is no question that the rights of others, especially those of Plaintiff's Father, would be injured if this Court were to issue the injunctive relief sought. Plaintiff's Father has a right to familial integrity, which would be entirely usurped by the issuance of the injunction. See, *e.g., Moore v. City of E. Cleveland*, 431 U.S. 494, 97 S.Ct. 1932, 52 L.Ed.2d 531 (1977) ("A host of cases ... have consistently acknowledged a 'private realm of family life which the state cannot enter.' " quoting *Prince v. Massachusetts*, 321 U.S. 158, 166, 64 S.Ct. 438).

### E. Public interest would not be served by issuance of the injunction.

The final factor, the public interest, also weighs in favor of denying Plaintiff's motion for a preliminary injunction. As the United States Supreme Court has held: "The history and culture of Western civilization reflect a strong tradition of parental concern for the nurture and upbringing of their children. This primary role of the parents in the upbringing of their children is now established beyond debate as an enduring American tradition." *Wisconsin v. Yoder*, 406 U.S. 205, 232, 92 S.Ct. 1526, 1541–42, 32 L.Ed.2d 15 (1972). Maintaining the familial integrity by placing the child with his Father would further the public's interest.

## IV.  CONCLUSION

Based on the foregoing, Defendants respectfully request this Court to deny Plaintiff's request for preliminary injunction.

Respectfully Submitted,

**RON O'BRIEN**
**PROSECUTING ATTORNEY**
**FRANKLIN COUNTY, OHIO**

*/s/Nick A. Soulas, Jr.*
Nick A. Soulas, Jr. (0062166)
First Assistant
Trial Attorney
Amy L. Hiers (0065028)
Assistant Prosecuting Attorney
Civil Division
373 South High Street, 13th Floor
Columbus, Ohio 43215-6318
(614) 525-3520
(614) 525-6013 FAX
nsoulas@franklincountyohio.gov
ahiers@frankincountyohio.gov
Counsel for Defendants

## CERTIFICATE OF SERVICE

This is to certify that the foregoing was filed electronically this 24th day of August, 2020.

Notice of this filing will be sent to all counsel by operation of the Court's electronic filing system.

Parties may access this filing through the Court's system.

*/s/ Nick A. Soulas, Jr.*
Nick A. Soulas, Jr. (0062166)
