## IN THE UNITED STATES DISTRICT COURT SOUTHERN DISTRICT OF OHIO
## WESTERN DIVISION

| | |
|---|---|
| John Doe, | Case No. 2:20 CV 4119 |
| Plaintiff | Chief Judge Algenon Marbley |
| v. | |
| Franklin County Children's Services et al., | |
| Defendants. | |

### PLAINTIFF'S MOTION FOR PRELIMINARY INJUNCTION

Plaintiff, John Doe ("Plaintiff"), pursuant to Federal Rule of Civil Procedure 65(a) and by and through undersigned counsel hereby moves this Court for an Order preliminarily enjoining all defendants from taking any action regarding the placement of Plaintiff until such time as this Court or a jury is able to determine the merits of Plaintiff's complaint.  Plaintiff would ask that the Court issue an Order on the preliminary injunction that mirrors the Court's existing temporary restraining order.

As demonstrated by his supporting Memorandum of Law, Plaintiff has satisfied the legal requirements for injunctive relief.

Respectfully submitted,

/s/ Zachary M. Swisher

Zachary M. Swisher (0076288)
**Sybert Rhoad Lackey and Swisher LLC**
153 South Liberty Street
Powell, OH 4306
Telephone: (614) 558-7254
Facsimile: (614) 785-1069
zach@law153group.com

## <u>MEMORANDUM IN SUPPORT</u>

Plaintiff, John Doe ("Plaintiff"), pursuant to Federal Rule of Civil Procedure 65(a) and by and through counsel respectfully submits this Memorandum of Law in support of his Motion for Preliminary Injunction ("Motion"), which seeks to enjoin all defendants from taking any action regarding the placement of Plaintiff until such time as this Court or a jury is able to determine the merits of Plaintiff's complaint.

In support of his Motion, Plaintiff sets forth herein the legal framework that forms the basis for his entitlement to a preliminary injunction. Plaintiff will present evidentiary support through testimony for his Motion at the hearing schedule on August 27, 2020, at which Plaintiff intends to demonstrate that Defendants have and are continuing to violate his Due Process and First Amendment rights. Plaintiff further intends to demonstrate that he has been, and is currently being, irreparably injured by Defendants' actions. That harm will exponentially increase if the injunction is not granted.

## I.     STATEMENT OF FACTS

Due to the accurate and well stated facts in the Court's Opinion and Order granting Plaintiff's Temporary Restraining Order, there is little need to reiterate the facts of this case. (ECF # 6 at ¶ I.). However, there are several additions Plaintiff would add to the Statement of Facts that will further inform the Court.

The Court pointed out that upon Plaintiff being adjudicated neglected and dependent by the Franklin County Domestic Relations Court, custody was awarded to Defendant, Franklin County Children's Services ("FCCS")  (Id.). Although that is eventually what occurred, the initial custody order by the Franklin County Domestic Relations Court was to Plaintiff's maternal grandmother. FCCS did not receive custody of Plaintiff until Defendants alleged, as

3

they did again during the TRO hearing in this matter, that Plaintiff was being coached by his grandmother and that grandmother was "sabotaging" the reunification plan with Plaintiff's father.  However, as this Court pointed out, the statements of grandmother and Plaintiff could not be considered "sabotage" if the statements are truthful.  Custody was not awarded to Defendant FCCS until this allegation was levied by FCCS against Plaintiff and his grandmother.

According to Plaintiff, he has seen his father exactly twice in his life, excluding any time when he was baby and has no recollection of this contact.  Plaintiff has had no contact with his biological father until Defendant FCCS was required by law through the Franklin County Domestic Relations Court to notify Plaintiff's father of the pending abuse, neglect and dependency action.  The reality is that Plaintiff's father is a stranger to him.  This is in addition to the fact that Plaintiff's father has had numerous issues which the Court articulated in its Order granting the TRO, that have cause and continue to cause Plaintiff fear, stress and continued anxiety.

Plaintiff turned thirteen two weeks ago and is in the seventh grade.  He has several challenges with school and was placed on a IEP.  When he initially started in his current school district Plaintiff struggled both academically and socially.  Through working with his teachers in his current district and his grandmother, Plaintiff made significant strides but is still in need of an IEP as well as other services through his school.  It has taken his current educators a year to get Plaintiff to the point he is currently at.  This is due to the dedication of Plaintiff's teachers, his grandmother and Plaintiff himself.  He has turned the corner on his education and has made incredible strides with the help if these professionals.

II.     ARGUMENT

A.     **The Preliminary Injunction Standard**

Pursuant to Rule 65, the Court may enter a preliminary injunction enjoining the defendants. "The purpose of a preliminary injunction is always to prevent irreparable injury so as to preserve the court's ability to render a meaningful decision on the merits." *United Food Commercial Workers Union, Local 1099 v. Southwest Ohio Reg'l Transit Auth.*, 163 F.3d 341, 348 (6th Cir. 1998) (citing *Stenberg v. Checker Oil Co.*, 573 F.2d 921, 925 (6th Cir. 1978)). A district court must balance four factors in determining whether to grant a preliminary injunction: "(1) whether the movant has a strong likelihood of success on the merits; (2) whether the movant would suffer irreparable injury absent the injunction; (3) whether the injunction would cause substantial harm to others; and (4) whether the public interest would be served by the issuance of an injunction." *Bays v. City of \*\*\*\**, 668 F.3d. 814, 818-819 (6th Cir. 2012) (citing *Certified Restoration Dry Cleaning, LLC* v. *Tenke Corp.* 511 F.3d 535, 542 (6th Cir. 2007). This is a flexible standard where the four factors are not prerequisites but instead are balanced by the Court. *Frisch's Rest., Inc. v. Shoney's Inc.,* 759 F.ed 1261, 1263 (6th Cir. 1985) (citing *In re DeLorean*, 755 F.2d 1223, 1229 (6th Cir. 1985).

"[T]he purpose of the [balance of harms] test is … to underscore the flexibility which traditionally has characterized the law of equity.  It permits the district court, in its discretion, to grant a preliminary injunction even where the plaintiff fails to show a strong or substantial probability of ultimate success on the merits of his claim, but where he at least shows serious questions going to the merits and irreparable harm which decidedly outweighs any potential harm to the defendant if the injunction is issued." *Friendship Materials, Inc. v. Mich. Brick, Inc.,* 679 F.2d 100, 104 (6th Cir. \*\*\*), *Worthington Foods, Inc. v. Kellogg Co.,* 732 F.Supp. 1417 (S.D. Ohio 1990) (That a strong showing of irreparable harm, decidedly outweighing harm to the defendant, may justify an injunction even where the movant cannot make a strong showing of

likelihood of success on the merits, as long as the plaintiff can show serious questions going to the merits of the suit.") (citing *Frisch's,* 759 F.2d at 1263; *DeLorean,* 755 F.2d at 1229); *Chaplaincy of Full Gospel Churches v. England,* 454 F.3d 290, 297 (D.C. Cir. 2006) ("If the showing in one area is particularly strong, an injunction may issue even if the showings in other areas are rather weak.")

 

"The purpose of a preliminary injunction is merely to preserve the relative positions of the parties until a trial on the merits can be held." *Certified Restoration Dry Cleaning Network, L.L.C. v. Tenke Corp.*, 511 F.3d 535, 542 (6th Cir. 2007) (citation and internal quotations omitted).[1] Because of this limited purpose, "a preliminary injunction is customarily granted on the basis of procedures that are less formal and evidence that is less complete than in a trial on the merits" and a party "is not required to prove his case in full at a preliminary injunction hearing ...." *Id.* (citation and internal quotations omitted).

Courts in this Circuit have repeatedly emphasized that the four factors should be balanced and "are not prerequisites to issuing an injunction ...." *Merkner v. AK Steel Corp.*, No. 1:09-cv- 423, 2010 WL 373998, at *1 (S.D. Ohio Jan. 29, 2010) (footnote omitted); *see Golden v. Kelsey- Hayes Co.*, 73 F.3d 648, 653 (6th Cir. 1996) (same). Although "[n]o single factor will be determinative as to the appropriateness of equitable relief," *Six Clinics Holding Corp., II v. Cafcomp Systems, Inc.*, 119 F.3d 393, 400 (6th Cir. 1997) (citation omitted), fewer

---

[1] The Court of Appeals for the Sixth Circuit has observed that, in determining whether a preliminary injunction is warranted, the district court's "focus always must be on prevention of injury by a proper order, not merely on preservation of the status quo ...." *United Food & Commercial Workers Union, Local 1099 v. Southwest Ohio Regional Transit Authority*, 163 F.3d 341, 348 (6th Cir. 1998) (citation omitted). In other words, the status quo should not be exalted over the equities that otherwise support injunctive relief. *See id.*, 163 F.3d at 348 ("[I]f the currently existing status quo itself is causing one of the parties irreparable injury, it is necessary to alter the situation so as to prevent the injury.") (citation omitted).

than all four factors may be a sufficient basis for a preliminary injunction. *See*, *e.g.*, *id.*, 119 F.3d at 399-400 ("For example, a finding that the movant has not established a strong probability of success on the merits will not preclude a court from exercising its discretion to issue a preliminary injunction if the movant has, at minimum, shown serious questions going to the merits and irreparable harm which decidedly outweighs any potential harm to the defendant if the injunction is issued") (citations and internal quotations and alterations omitted); *Greif, Inc. v. MacDonald*, No. CIV.A. 3:06-CV-312-H, 2006 WL 3498050, at *4 (W.D. Ky. Dec. 1, 2006) (court granted

injunction, albeit "crafted narrowly," even though "it [was] far from clear that [the plaintiff would] prevail").

Whether to grant Plaintiff's Motion is firmly within this Court's discretion, and the balancing of the equities which inform that discretion are rarely disturbed. *See*, *e.g.*, *Six Clinics*, 119 F.3d at 400 ("[T]he district court's weighing and balancing of the equities is overruled only in the rarest of cases") (citations and internal quotations omitted). Here, Plaintiff intends to provide factual support that will decidedly tip the equities in favor of an injunction preliminarily enjoining the defendants.

    **B.**    <u>**Plaintiff Will Demonstrate A Substantial Likelihood Of Success On His Claims That Defendants Have Violated His Due Process and First Amendment Rights**</u>

To satisfy the first prong of the preliminary injunction analysis, plaintiffs are not required to demonstrate that they *will* succeed on the merits at trial. Nor are plaintiffs required to demonstrate that they will *probably* succeed on the merits of their claims. Plaintiffs must only demonstrate that the legal issues they raise are substantial enough to constitute "fair ground[s] for litigation and thus [require] more deliberate investigation." *Roth v. Bank of Commonwealth*,

583 F.2d 527, 537 (6th Cir. 1978). This Court must only "satisfy itself, not that the plaintiff certainly has a right, but that he has a fair question to raise as to the existence of such a right." *Brandeis Machinery & Supply Corp. and State Equipment Co., v. Barber-Geene Co.*, 503 F.2d 503 (6th Cir. 1974) (citing *American Federation of Musicians v. Stein*, 213 F.2d 679, 683 (6th Cir. 1954), *cert. denied*, 348 U.S. 873, 75 S. Ct. 108, 99 L. Ed. 687 (1954)). "It will ordinarily be enough that the plaintiff has raised questions going to the merits so serious, substantial, difficult and doubtful, as to make them a fair ground for litigation and thus for mere deliberate investigation." *Id.* (citing *Hamilton Watch Co. v. Benrus Watch Co.*, 206 F.2d 738, 740 (2nd Cir. 1953)). Plaintiffs' constitutional claims meet this standard.

The Due Process Clause of the Fourteenth Amendment to the United States Constitution provides, in relevant part:

> [N]or shall any State deprive any person of life, liberty, or property, without due process of law." U.S. Const. amend. XIV. 42 U.S.C. §1983 provides, in pertinent part the following: Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory or the District of Columbia, subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress .... 42 U.S.C. §1983.

"For more than a century the central meaning of procedural due process is clear: 'Parties whose rights are to be affected are entitled to be heard; and in order that they may enjoy that right they must first be notified." Fuentes v. Shevin, 407 U.S. 67 80 (1972) (quoting Balwin v. Hale, 1 Wall 223, 233, 17 L. Ed. 531 (1863)). The right to prior notice and a hearing is central to the constitution's command of due process. "The purpose of this requirement is not only to ensure abstract fair play to the individual. Its purpose, more particularly, is to protect his use and possession of property from arbitrary encroachment…" *United States v. James Daniel Good*

*Real Property*, 510 U.S. 43, 53 (1993) (quoting Fuentes v. Shevin, 407 U.S. 67, 80 (1972).

The United States Supreme Court has continually held that the liberty interest afforded under the Fourteenth Amendment is not only afforded to adults and also cautioned that states possess a greater power to regulate the conduct of children than they do adults. *Carey v. Population Services Inc*., 431 U.S. 678, 692 (1977). The Supreme Court has also upheld the liberty interest of children against infringement by governmental agencies. *Planned Parenthood of Central Mo. v. Danforth*, 428 U.S. 52 (1976).

John Doe unquestionably has constitutional due process rights which are at issue in the present case. The larger question before this Court is whether those rights were infringed upon by Defendants. The analysis into a due process violation must take into account the facts and circumstances of each individual category of citizen or maybe more accurately the category of issue that brings them before the Court. For example, every citizen is afforded due process rights as it relates to the deprivation of liberty in the context of a criminal allegation. However, the due process is a sliding scale. The due process that is afforded to a person alleged to have committed an offense punishable by death is much different than the due process afforded to a citizen alleged to have committed an offense punishable by a fine. The question is not whether a citizen has due process rights but the extent to which they exist.

In the instant vase, the Franklin County Domestic Relations Court gave custody to John Doe's maternal grandmother. However, Defendant FCCS provided information to the Court that would grant custody to Defendant FCCS and allow them a greater degree of control over John Doe, which should have increased the due process John Doe was provided. However, Defendants unilaterally determined to disregard the wishes of John Doe and the recommendation from the guardian ad litem and place John Doe with a stranger for the sole reason that John Doe shares

DNA with this individual.  Much like the sliding scale for criminal cases, there must be one in the context presented in the instant case in order to truly and thoroughly protect the due process rights of children.

Defendants have indicated during the TRO hearing that the court cannot determine where FCCS places a child.  Furthermore, Defendants have represented that parents have the right to raise their children.  Despite these representations and the assertion that these rights of parents are somehow absolute, FCCS does have the authority to remove a child from a parents' custody and require the Court to make this determination.  The issue in the instant case is not custody but placement.  Defendants must provide due process at the beginning of the process and arguably at the end but to they seem to neglect the need to provide those same due process rights to the child, especially one like John Doe in the instant case where he is capable of providing an opinion on the exercise or deprivation of his rights.

### C.    Plaintiff Will Suffer Significant And Irreparable Injury Absent The Preliminary Injunction

If this Court does not grant this injunction, Plaintiff, will suffer irreparable injury.  This Court articulated the issue of irreparable harm in the Order grating the temporary restraining order.  Those issues still remain and are arguably even more so now that Plaintiff's father has indicated he has found fault with the fact that Plaintiff is pursuing this action.  The significant and irreparable harm that existed prior to the entry of the TRO still exist.  In addition to the information provided to the Court at the TRO hearing, counsel has been informed that Plaintiff is in school and has an IEP.  This is based on academic and social issues Plaintiff had when he first enrolled.  Plaintiff has had a team of individuals in his school who have worked with Plaintiff and Plaintiff's grandmother to put a plan in place to allow Plaintiff to be successful in school.  Plaintiff has made incredible strides with the help of this team of teachers and his

grandmother who has been supportive of the team's approach and has attended all parent-teacher conferences with Plaintiff's academic team. The concern is that Plaintiff with further regress if taken out of this structured environment.

Specific to the First Amendment retaliation claim, it is well-settled that even minimal loss of First Amendment freedoms, "unquestionably constitutes irreparable injury." *Connection Distrib. Co.*, 154 F.3d at 288 (quoting *Elrod*, 427 U.S. at 373,); *Elrod*, 427 U.S. at 373(1976); *Newsom*, 888 F.2d at 378;*Accord, e.g.*, *Bonnell v. Lorenzo*, 241 F.3d 800, 809-10 (6th Cir. 2001); *Schicke v. Dilger*, 2017 U.S. App. Lexis 27024 *6-7 (6th Cir. 2017). *See also N.Y. Times,* 403 U.S. at 715. Further, these rights need only be threatened to constitute irreparable harm. The Court further stated that "[t]he loss of First Amendment freedoms, for even minimal periods of time, unquestionably constitutes irreparable injury." *Elrod*, 427 U.S. at 373-74 (citing *N.Y. Times*, 427 U.S. at 374).

Plaintiff has tried to articulate to the Defendants that he has concerns about the decisions being made that will affect the rest of his life. He has been in situations before that have been unhealthy and that have caused him psychological trauma, the extent of which is yet to be determined. When he has expressed these concerns the response of FCCS is to represent to a court that he is just being coached and to punish Plaintiff by accelerating the process so as to remove Defendants from the process and to pass the responsivity of ensuring Plaintiff's wellbeing to another state.

**D.**  **The Harm to Plaintiff Outweighs Any Hypothetical Harm To Defendants Or Any Third Parties**

Here, no hardship to Defendants will occur at all as a result of the requested injunction. The only issue that Defendants have raised or even can raise, is that they will have to reapply

through the ICPC. This is not harm in any respect. This is certainly not harm as compared to the harm Plaintiff will suffer without the injunction in place. The Defendants have argued that the injunction will be harmful to John Doe's father. That argument is specious at best given the lack of involvement or interest Plaintiff's father has shown throughout John Doe's life. This lack of interest has been evidenced even after this Court granted the TRO. The week after the Court granted the TRO, Defendants set up a conference call or video meeting with Plaintiff, his grandmother, the FCCS case team, Plaintiff's mother and father. Everyone was in attendance except for Plaintiff's father. The idea or argument that father will suffer any harm from the issuance of the injunction flies in the face of the facts before the Court evidencing Plaintiff's father's apathy towards his son for his entire life.

### E. The *Younger* Abstention Doctrine and *Rooker-Feldman* Does Not Divest This Court of Subject Matter Jurisdiction.

In *Exxon Mobil Corp. v. Saudi Basic Industries Corp*., the Supreme Court made clear that the *Rooker-Feldman* doctrine—which prohibits the lower federal courts from reviewing appeals of state-court decisions—applies only to an exceedingly narrow set of cases. 544 U.S. 280 (2005). "The *Rooker-Feldman* doctrine bars lower federal courts from conducting appellate review of final state-court judgments because 28 U.S.C. § 1257 vests sole jurisdiction to review such claims in the Supreme Court." *Berry v. Schmitt*, 688 F.3d 290, 298 (6th Cir. 2012); see *D.C. Court of Appeals v. Feldman*, 460 U.S. 462 (1983); *Rooker v. Fidelity Trust Co*., 263 U.S. 413 (1923).

The doctrine has a limited scope. It does not, for example, bar "a district court from exercising subject-matter jurisdiction simply because a party attempts to litigate in federal court a matter previously litigated in state court." *Exxon*, 544 U.S. at 293. It applies only to the "narrow" set of "cases brought by state-court losers complaining of injuries caused by state-court

12

judgments rendered before the district court proceedings commenced and inviting district court review and rejection of those judgments." Id. at 284.

*Rooker-Feldman* is often discussed along with the abstention doctrines, like *Younger* and Pullman, because they similarly prohibit review of state-court actions by federal courts. But *Rooker-Feldman* is not an abstention doctrine—that is, a "judicially created" exception to federal-court jurisdiction. See *Lindsey v. Normet*, 405 U.S. 56, 62 n.5 (1972). Rather, *Rooker-Feldman* operates as a natural consequence of Congress's decision not to grant subject-matter jurisdiction to the federal district courts or courts of appeals to consider appeals of state-court decisions.

The Court is to determine whether *Rooker-Feldman* bars a claim by looking to the "source of the injury the plaintiff alleges in the federal complaint." *McCormick v. Braverman*, 451 F.3d 382, 393 (6th Cir. 2006). If the source of the plaintiff's injury is the state-court judgment itself, then *Rooker-Feldman* applies. Id. "If there is some other source of injury, such as a third party's actions, then the plaintiff asserts an independent claim." *Lawrence v. Welch*, 531 F.3d 364, 368–69 (6th Cir. 2008) (quoting *McCormick*, 451 F.3d at 394).

In a recent decision in February 2020, in which the 6th Circuit found *Rooker-Feldman* inapplicable, Judge Sutton drafted a concurrence stating as follows:

> After Justice Ginsburg's unanimous opinion in Exxon Mobil v. Saudi Basic Industries, 544 U.S. 280 (2005), it looked like the Court finally and mercifully had driven a stake through Rooker-Feldman. The so-called doctrine had caused so much mischief, creating needless complications, distracting litigants and courts from the properly presented federal issues at hand, and helping no one, not even the supposed beneficiaries of its largesse: state court judgments. One could be forgiven for thinking, as I and others did, that, unless your name was Rooker or Feldman, this supposed limit on the jurisdiction of the federal courts applied to no one, save the occasional innocent who thought he could obtain appellate review of a final state supreme court decision in federal district court, as opposed to the U.S. Supreme Court. See Samuel Bray, Rooker-Feldman (1923–2006), 9 Green Bag 2d 317, 317–18 (2006); In re Smith, 349 F. App'x 12,

13

17 (6th Cir. 2009) (Sutton, J., concurring in part and dissenting in part). *VanderKodde, et al. v. Mary Jane M. Elliott, P.C., et al*, No. 19-1091(6th. Cir. 2020).

Simply put, *Rooker-Feldman* does not apply to the instant case. The injury that Plaintiff has suffered and continues to suffer is not due to or based on a court ruling. Plaintiff's injury is based on the actions of a third party, or in this case the actions of the Defendants.

As stated above, *Rooker-Feldman* is often times discussed in the same terms as *Younger* abstention. "Abstention from the exercise of federal jurisdiction is the exception, not the rule...abstention rarely should be invoked, because the federal courts have a 'virtually unflagging obligation . . . to exercise the jurisdiction given them." *Ankenbrandt v. Richards*, 504 U.S. 689, 705 (1992). The origin of the Younger abstention doctrine is in the context of a criminal court proceeding. In *Younger v. Harris,* the Supreme Court held that, absent extraordinary circumstances, a federal court must decline to interfere with pending state criminal proceedings, because of considerations of comity, equity and federalism. 401 U.S. 37, 44-45 (1971). The *Younger* abstention has been extended to civil proceedings in which important state interests are implicated. *Huffman v. Pursue, Ltd.,* 420 U.S. 92 (1975); *Fieger, id.*").

A district court may abstain under the Younger doctrine if three conditions exist: there are state proceedings that are (1) currently pending; (2) involve an important state interest; and (3) will provide the federal plaintiff with an adequate opportunity to raise his or her constitutional claims. *Nimer, et al. v. Litchfield Twp. Bd. of Trs*., et al, No. 12-3309 (6th Cir. 2013). (citing *Hayse v. Wethington*, 110 F.3d 18, 20 (6th Cir. 1997)).

The first condition for the application of *Younger* abstention is that the state proceeding must be pending on the day the plaintiff sues in federal court–the so-called "day-of-filing" rule. *Fed. Express Corp. v. Tenn. Pub. Serv. Comm'n*, 925 F.2d 962, 969 (6th Cir. 1991). In the instant

case, there is a pending state court action that was pending on the date the Complaint was filed. However, the pending action does not address the placement of John Doe. It is pending only as to custody orders that the Court granted to Defendant FCCS. The pending action does not and cannot address the issues raised in the federal action.

The second condition for *Younger* abstention is that the state has a substantial, legitimate interest in the kind of state proceeding at issue. *New Orleans Pub. Serv., Inc. v. Council of the City of New Orleans* et al., 491 U.S. 350, 365 (1989). This factor is not as clear as one would initially think. The state has an interest in the proceedings at issue but it is not a substantial interest. The true interest in the proceedings are the children. Additionally, the issue raised by the federal complaint in this matter is not one that is related to a proceeding at all. Defendants have even asserted that no Court is capable or has jurisdiction to address the issues in the Complaint.

The third condition for *Younger* abstention is that the state proceeding affords an adequate opportunity for the federal plaintiffs to raise their constitutional claims. *Fed. Express Corp*., 925 F.2d at 970 (quoting *Moore v. Sims*, 442 U.S. 415, 430 (1979)) (parallel citations omitted). The pending state proceeding does not afford Plaintiff an opportunity to raise his constitutional claims. The court that oversees the pending proceeding has no authority to determine or order FCCS to do anything regarding placement as testified to by FCCS during the TRO hearing. Plainly stated, Plaintiff has nowhere else to go to address the violation of his due process rights and to seek the appropriate remedy.

The United States Supreme Court has held that "[u]nder our precedents, federal courts have the power to dismiss or remand cases based on abstention principles only where the relief being sought is equitable or otherwise discretionary." Quackenbush, 517 U.S. at 731 (emphasis added). In the instant case, Plaintiff has made a demand for relief of legal remedies as well. Both the

United States Supreme Court and the 6th Circuit have held that the Court cannot dismiss a claim if abstention is applied where a legal remedy is sought. *Nimer, et al. v. Litchfield Twp. Bd. of Trs., et al*. No. 12-3309 (6th Cir. 2013). That is the case here with Plaintiff.

As with *Rooker-Feldman*, *Younger* abstention does not apply to the instant case as stated herein. Alternatively, if the Court did determine that Younger is applicable, the determination by the Court would be to stay the matter pending the outcome of the state court proceeding as opposed to entering a dismissal. Id. at 5.

## CONCLUSION

Plaintiff has satisfied the elements for the issuance of an injunction and the Court has jurisdiction to grant the injunction as abstention is inapplicable. For the foregoing reasons, and based on the evidentiary presentation Plaintiff will make at the preliminary injunction hearing, Plaintiff's Motion should be granted.

Respectfully submitted,


/s/ Zachary M. Swisher
Zachary M. Swisher (0076288)
**Sybert Rhoad Lackey and Swisher LLC**
153 South Liberty Street
Powell, OH 4306
Telephone: (614) 558-7254 Facsimile: (614) 785-1069

zach@law153group.com

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that on August 24,2020, I electronically filed the foregoing paper(s) with the Clerk of the Court using the ECF system which will send notification of such filing to all ECF participants..

/s/ Zachary M. Swisher

_____

Zachary M. Swisher (0076288)